Good morning. My name is Vicki Buchanan. I'm here on behalf of Robert Cervantes. In this case, there is a, Mr. Cervantes was deprived of his rights to an impartial jury because of an unreasonable application of evidence to, in light of the evidence. In this case, the judge instructed the jury during the course of the trial that they were to report any misconduct on behalf of anyone in the courtroom. Juror 11, before the closing arguments, juror 11 overheard juror number 5 say, ask the bailiff when they could attend sentencing. This is before argument and how they could get to the sentencing. It bothered her so much that she stayed up all night and the next morning she reported to the judge, according to his instructions, that she did not believe juror number 5 could be impartial. The court inquired, asked judge juror 11 about the situation, and asked her if juror number 5 was left on the jury, could she deliberate with juror number 5? And juror number 11 said no. She said no. She said she could not. In the hypothetical question context, she said she could not deliberate with her. Twice she said that. Well, no. Why do you call that the hypothetical context? Because the involving a juror and another juror saying, even if you tell me to sit with this juror, I won't be able to do that. It doesn't sound hypothetical to me. It sounds like a real problem in a courtroom. Well, it would be if the, it is hypothetical, as the dissent pointed out in the court of appeals, because that would not happen if juror number 5 was off of the jury. I mean, she, the hypothetical part is, if I leave juror number 5 on, would she be able to deliberate with her? But the court read it as, this is a person who will not, who has indicated that if I give her certain instructions, she will not pay attention to me. But that's a, but that finding is, that finding is not supported, because the judge has just, she has just come in, based on the judge's instructions, to talk to the judge about what she observed. Don't we give any deference to the sitting trial judge who's watching and listening? I mean, it's interesting for us to talk about this, but here you've got a judge on the scene, who's listening to this juror and who's responsible for making sure that the court and the trial proceeds according to the rules. And the suggestion is, she's not going to pay any attention to what the judge says. On that particular Don't we give some kind of deference to the sitting trial judge? Well, there should be some deference given there, but this is an incredibly unique situation. First of all But what do you think should have been done? I mean, what do you think What do you think should be done? What do you think the trial judge should have done? I think he should have dismissed juror number five. Then he should have inquired as to which of the alternates was also, had also prejudged the case. Right, but what did juror number five do wrong? Juror number five was the one that said, how do we, you know, what do we do with sentencing? Juror number one had said that she'd already made up her mind, basically, that No, she didn't say I've already made up my mind. You're inferring that from what she did say. Well, that's what the, that's what the, that's what juror number 11 and juror number four both heard when they, when she asked the question of the judge. Also, juror number four described juror number five as being unwilling to listen to the evidence, which actually got into a little bit of questioning of the deliberation process. But she also talked about that juror number five was not listening to the evidence and would get angry if they wanted to ask for more evidence and that sort of thing. What did the California courts tell us about this? The majority said that it was, you know, that there was, there was a demonstrable reality that she would not follow the court's instructions. The dissent vehemently. You know, the dissent is fine, but the dissent is really irrelevant. And what's the matter with what the majority said? Was that unreasonable based on an improper understanding of the law? What was improper about it is there was no demonstrable reality. I mean, there was a hypothetical question, not a demonstrable reality that she would not follow the law. If in voir dire, for example, I ask a prospective juror, will you follow the law as I give it to you at the end of the case? And the juror says no. What should happen under those circumstances? Well, probably they would be dismissed for cause under those circumstances. Probably. Well, unless the judge asks again and they change their mind, yes. And the question is how far away from that is the situation that we're dealing with. And the trial judge felt that's what the trial judge was confronted with. But when you're talking about instructions also, you have to look at the case laws and we're talking about instructions on the law for a lot of, in a lot of points. Now, perhaps there's a contempt issue here, but I, the juror was saying, I don't think I can deliberate with this person because I think she's prejudged the case. You should hold her in contempt? Well, I don't know. I don't know that necessarily. I think what would happen is the court should have said, juror number 5 is, if the court had said, juror number 5 is going to stay on the case, are you able to confer with juror number 5? Are you able to be impartial? And at that point in time, the juror said, no, I can't. But isn't that effectively what happened? I don't know. I think that it was probably more like a colloquy, kind of like a what if, what, that sort of thing. There was no directive by the judge saying, if I order you to. He didn't exactly say that. He said the hypothetical, what if I. That's the kind of language. All right. So let's say the judge, though abuse of discretion, whatever you want to say, in dismissing juror number 11. You're not complaining about dismissing 5, right? No. You agree with that? Yes. So let's say he shouldn't have dismissed 11 and he did. So what? Well, then that left two spaces open, two spaces for the alternates. And the judge did not follow through on the issue about one of the alternates. Juror number 4 said that one of the alternates agreed with juror number 5 that had asked along with juror number 5. I'm not saying what would have happened if he had done it. I'm saying, so what if he erred? I mean, let's say abuse of discretion or erred or whatever standard you want to apply. What follows from that? We can't get juror number 11 back. Well, then we've got now we've got a structural error because we've got an impossible biased juror on there, another juror who's already prejudged the case. I'm sorry. Which juror is that? It was one of the alternate jurors. Juror number 4 said that one of the alternate jurors had also asked the question about So your real objection is to the admission of having that other juror, the alternate? The ultimate problem is that other juror, the one that the judge didn't follow up. Admittedly, the judge said he was having a really bad day and he had a really bad headache. And that's why he wasn't making any sense in one of his earlier statements. But what do you have on the record about that other juror? Oh, the juror number 4 was being asked about it, and then she said that someone else had started to ask the question, but the judge didn't follow through. And so after juror 11 was on the stand, the court asked juror number 4 again, based on defense, asked juror number 4 to elaborate on the situation. But the judge got it confused. He thought that juror number 4 was the juror who said someone got a funny look on their face, which was actually juror 11 talking about juror number 4. We have to look at is the last recent decision of the State courts, and that's the State Court of Appeal, I guess it's a Supreme Court decision in this case. And what they say about this situation is that the court then interviewed juror number 4, who had also heard the question asked of the bailiff. She'd been disturbed by it, believing it showed a decision that had already been made by juror number 5. However, when asked whether she could deliberate with that juror, she said, sure, she could keep an open mind. So what was wrong with keeping juror number 4, and the California Supreme Court said that was fine. Oh, juror number 4 is fine. The problem was the court never followed up on what juror number 4 said initially, which was another alternate juror. Another juror asked the same question as juror number 5. And then the defense counsel asked to come back and re-question juror number 4 about what the alternate juror said. And the court was confused as to who said what, and so they never got to the issue about which alternate juror also said that they had prejudged the case. The objection was made to that? Yes. Well, it wasn't an objection that the court – the trial attorney asked the court to ask juror number 4 about the other juror who had also indicated that they had prejudged the case. And the court asked juror 4 questions, but there was no follow-up objection after. No objection, period. There was no objection to – the lawyer didn't stand up and say, look, this other juror, whoever it was, I object to his inclusion on the panel. There's nothing like that. Well, there was the question – Was that issue raised to the California – Yes. Court of Appeal? Yes, about the alternate juror, the follow-through. It wasn't that there was – there was – that was brought up in the briefing at the Court of Appeal. But I didn't see any objection on the scene. On the scene, the court – the trial attorney asked to go through the record and – That's just a way of saying there was no objection. But when the court said he got her mixed up with the wrong – with the other juror, he said, well, you've got the wrong person. We're looking for an objection. You have to make objections in order to preserve points. And if there was none, that cuts it down. Well, there was no specific objection. No, there wasn't. No, you said there was no specific objection, strike-specific. There was no objection, period, that I could find. And what does the Court of Appeal say about that, about the alternate juror? The Court of – the – there was not mentioned in the – in the main opinion. It was mentioned in the deception. Was there a clearly applicable Federal law that applies in this situation? Was there some well-established law that the State court selected contrary to? The basis of this appeal is based on application of facts in light of – What's the law in light of? Under the 2254. That's the habeas standard I'm saying. What's the Sixth Amendment principle or well-established? Duncan v. Louisiana, right to an impartial jury. Well, that's very vague, though. It doesn't give any guidance at all as to how to handle a situation like this. As far as an actual Supreme Court decision on a situation like this, no. See, that's part of the problem with EDPA, the standard of review. Who looks to that, looks for Supreme Court clearly established law? In a – but they also can look at it as Miller L. has said. You can also look at – it's a hard standard, but you can look at facts in light of the evidence as well. No, I'm looking at the dissent in the Court of Appeal, and I don't see what the discussion of the alternate juror. Maybe I'm just missing it. Can you – I need to get my – I should have looked at the dissent and focused on the majority opinion, but I don't see it now. There's a great deal of discussion about jury 11 and jury 5, and the dissent definitely disagrees with that, but I'm not seeing where he discusses the – because it seems to me that the whole business with jury 11 and jury 5 doesn't do you any good at all, unless you can show bias as to the juror that was seated, right? Right. So, I'm sorry, do you have it? No, I don't. It was not in the dissent. It was not in the majority? It was not in the dissent? It was in the brief? I don't know if it was in the brief. I believe it was, but I don't know where I got that. Okay. So, if you're wrong about this, you should send us something. If there's something in the record, you should – Okay. I will go through. You should send a 28-J or something. But if I understand correctly, as the record stands now, there was no contemporaneous objection in the trial court, except, as you said, there was a mention and a request for a further query of the juror, but there was no objection to the seating of the alternate on that basis. So far as you know, the point was there was no mention in the Court of Appeal briefs, and we can't find a discussion of it as a majority dissent in the Court of Appeal. Now, the lack of a contemporaneous objection might not be fatal if the – I don't exactly know what the rules are in California when you fail to make a contemporaneous objection. I think they're like in the federal court, but – Some things are waived and some aren't. Exactly. So, I don't exactly know what the rules are. Certainly, the Court of Appeal could take the position that it wasn't waived, but they don't do that in their opinion. And if it's not in the briefs and it's not – there's no contemporaneous objection and there's no discussion in the state court opinion of dissent, then it's going to be very difficult to find there wasn't any kind of error preserved. So, in any event, if you find something – I will review briefs. Bring it to our attention. You're way over your time. Okay. Thank you. Good morning, Your Honors. May it please the Court, Anthony DiSilva, Deputy Attorney General Counsel for Respondent Warden Plyler. Regarding the issue of removal of a juror, the district court couldn't find any governing United States Supreme Court authority specifically addressing the situation. I have not been able to find any, Your Honor. So, since this is an EPPA case – Meaning how to handle a recalcitrant juror. Yes, Your Honor. Wasn't it really just a state law question anyway? I mean, this would be governed by state law unless there was some manifest injustice that was a violation of Sixth Amendment rights. Yes, Your Honor. I believe that is correct. This was purely a Penal Code 1089 case to determine whether there was good cause to remove juror number 11. And, you know, I don't know about the state court. Again, I don't have practice in state court. But, you know, Judge Todd has a great deal of experience in state court. But in federal court, if you're a district judge, you are on the side of caution. And, you know, if there's any question about a juror, the tendency is to say, ah, you know, let's go on to the next one. And I'm not aware of any entitlement to a particular juror. The question is whether the jury that was assaulted in the suit is fair, even though some other juror could have been seated and might have been fair as well. It doesn't really matter what matters. And I don't know whether it's different in state court, but I think most district judges operate on this assumption that you really can't go wrong by telling a juror, okay, well, thank you very much, you're excused. I believe that is substantially correct, Your Honor. And in this case, the judge. That's exactly what the judge said. Yes. And the judge was very cautious, the trial court in this case, in his approach in questioning juror number 11 and the ultimate decision to let go both juror 11 and juror number 5. In fact, the trial court said it thought it was doing the fairest thing for Mr. Cervantes, in this case, by following that approach. But then there was the lingering question about whoever was seated. There were two alternates that came up and were seated, and then there was this lingering question as to whether anything was preserved vis-à-vis one of those alternates. I'm not aware of that, and I can't recall that from the opinion, Your Honor. And again, I believe there was no contemporaneous objection regarding the alternate juror in the way the questioning arose. You don't know whether that issue was raised on appeal to the court of appeal? I don't recall. I did not brief the case on direct appeal, so I don't recall if it was raised in any of the briefing to the court of appeal. But you must have seen the briefs. I recall generally seeing them a while ago, but I don't recall that issue being brought up, Your Honor. Okay, fair enough. Anything further? Yes. Regarding the instructional error claim, CALJIC 8.50, I believe that the omission of that instruction was not structural error. It did not deprive Mr. Cervantes of a defense in this case, and the harmless error approach followed by the court of appeal and ultimately by the district court was correct, and it was harmless under the facts of this case. So unless this Court has any questions. And that's subject to AEDPA? Yes, Your Honor. By determination? Yes. Okay. There being no further questions, thank you. Thank you. You are way over your time. If you'd like to take 30 seconds for your rebuttal, please keep it short. Just briefly, the case, the jury instruction is contrary to Mulaney v. Wilbur in terms of the burden of proof. Mulaney did object to the removal of Juror 11.  And so the only things that are possible is to have manslaughter when murder and manslaughter are both possible. And the attorney did object to the removal of Juror 11 vehemently, but there was no objection regarding what Juror 4 said. Thank you very much. KJ Society withstands the move.
judges: Kozinski, Trott, Wardlaw